*J. R. Swan, J.
The statutes under which the proceedings mentioned in the petition and answer were founded, are as follows:
The act of March 12, 1849, amending the charter of the Steubenville and Indiana Railroad Company (47 L. L. 256), provides:
“Sec. 3. That the mayor and town council of the town of Steubenville, in Jefferson county, and all other incorporated towns through or near which said road may be located; and the commissioners of Jefferson and all other counties, and the trustees of the several townships through which said road may be located, are each respectively hereby authorized to subscribe to the capital stock of said company; on the part of such counties, a sum not exceeding two hundred thousand dollars, and on the part of the several towns and townships, a sum not exceeding one hundred thousand dollars; and the commissioners of such counties, trustees of such townships, and town councils of such incorporated towns, so subscribing, are hereby empowered to make such loan or loans as shall be necessary therefor, at an interest not exceeding seven per centum per annum. And they are further hereby, authorized to levy such an amount of tax upon the taxable property of their respective counties, townships, and incorporated towns, as shall be necessary to pay the interest upon such loan or loans as it may become due; provided, however, that all dividends arising from the proceeds of such road, which may fall to such counties, townships, and incorporated towns, shall be first applied to the payment of such interest.
“ Sec. 4. Before such subsciption shall be made, as authorized in section three of this act, the legal tax-payers residing in said counties, townships, and incorporated towns aforesaid, shall, at the annual election held in such counties, townships, or incorporated towns, or at a special election ordered for that purpose, to be held at such time and place as the said commissioners, trustees, and town council shall direct, decide by a majority vote in favor of such subscription ; but if a majority of said tax-payers decide against subscribing said stock, then it shall be unlawful for said commissioners, trustees, and town council as aforesaid, to subscribe such stock.”
By the amendatory act of March 21, 1850 (48 L. L. 288), it was provided:
“ Seo. 2. That the trustees of any township, so subscribing, are hereby required to deposit with the auditor of the county in which the said township shall be situated, a certificate of the amount of the bonds so executed in conformity with the preceding section, from *297 time to time, as they shall be called for by the authorities of the said railroad company, and it shall be made the duty of the county auditor to levy upon the taxable property of the several townships subscribing, respectively, an amount of taxes equal to the annual interest on the bonds so issued, which shall be collected by the county treasurer, in the same manner and at the same time as the other taxes in the respective counties.”
*By the amendatory act of January 16,1851 (49 L. L. 458), it is provided:
“ Seo. 3. In all cases of elections which shall be held under the provisions of this act, or which have been or shall be held under the provisions of the act to which this is an amendment, which said election shall have or which may result in favor of subsciptions, it is hereby made the duty of the commissioners, trustees, and councils, ■or their successors in office, before any bonds of said counties, townships, or towns have been issued in pursuance of the provisions of said act, to file with the auditor of the county in which said election may have been holden, a certificate of their proceedings thereon, which said certificate shall be verified by the oath of one or more of the persons by whom said election may have been holden, and which shall be recorded by said auditor, and the said record, or a certified copy thereof, by the said auditor, shall be con•clusive evidence of the legality and validity of the subscriptions made by the commissioners, trustees, or councils to the capital stock of said company; and any bonds or notes signed and issued by said commissioners, trustees, or councils, to pay the subscriptions of their respective counties, townships, and towns to the said capital stock, shall be deemed and taken as conclusive evidence that the ■said bonds or notes were so signed and issued in pursuance of the ■said acts.”
The counsel desiring the case to be determined upon the merits, as if the tax-payers or trustees of the township were asking relief, matters of form and questions as to parties are waived.
No objection is interposed by the defendant, either to the legality of the election, or to any irregularity, in form or substance, of the certificate of the trustees of the township, filed in the auditor’s office and recorded ; nor to the subscription, the issuing of the bonds, their sale, or the receipt of the money from the purchasers of the bonds. But the defendant says that no election could bo had until the line of the railroad was actually established and located through the township; and that consequently the whole proceedings were unauthorized and void.
*298 It is perhaps a question of some doubt, whether the general assembly did not intend that the railroad should be actually established through a township before an election. But we do not consider it necessary in the case before us to decide that question, as we are of the opinion that, conceding a location would have been necessary before an election, the acts of the parties interested have been such as to preclude them from now denying the authority *and power of the trustees of the township to issue the township bonds.
If the location of the road should have been first made, any taxpayer of the township, for himself and all others interested, could, at any time before the issuing or negotiation of the bonds, have intervened and enjoined their issue as unauthorized, on account of the road not having been located. Th ey, however, either intentionally or from neglect to assert their legal rights, and without protest or intei’forence, suffered the election to take place, their public agents, the trustees, to subscribe for stock, to issue the bonds and receive the proceeds. They also afterward, and for the. period of three or four years, paid the interest by taxation ; and thus gave credit to the bonds of the township. They now desire to retain the money of the original bondholders; refuse to pay interest; deny their obligations to pay back the principal; disaffirm the acts of their public agents, who, under the forms of law and by their direct instigation through the ballot-box, issuedi and negotiated these bonds. They had an opportunity, before innocent third persons could be injured or committed to the acts of their public agents, to enjoin their proceedings, and protect themselves; they did- not seek that protection ; but now, when they have received all the fruits of the contracts of their agents from third persons who have acted upon their recognition of the authority of their agents, they ask the privilege of denying this recognition, and thus escape from their obligations. It is too late for them to do so, as against innocent third persons. They are concluded,, not simply by the acts of their public agents, but by their own. It is true, that when public officers exceed the powers vested in them by general laws, their acts are no longer official, but void; and this principle would be applicable to the case before us, if the trustees had derived their sole authority to make the contract under consideration from the law, without any interposition, sanction, or authority from the tax-payers of the township. But, in the case *299 before us, the trustees derived their authority to subscribe for the-stock of the railroad, and to issue the bonds, specifically, from their constituency, the tax-payers of the township. The trustees, unless authorized by the tax-payers, ^derived no authority to act from the laws under consideration. In fact, the whole transaction under the legislation was for the purpose of consummating an agreement, having all the substantial elements of a private contract, between the tax-payers as principals, who by vote made the trustees their agents to contract for them, on one side, and the-railroad and bondholders on the other. The rules of law applied to individuals, and founded upon the clearest principles of justice and sound morals, should be equally applicable to those parties. The tax-payers, as principals, and by their votes in the forms of law, set their agents in motion; professed to clothe them with special authority to make a special contract with third persons, for' their benefit; by voting, instigated those agents to make the subscription and issue the bonds; and thus induced, on the faith of this recognition, innocent third persons to part with their money and receive, in lieu thereof, these bonds. If the trustees of the-township and the tax-payers supposed, until very recently, as they probably did, that the subsequent permanent establishment and location of the railroad through the township was sufficient to authorize the issuing of the bonds, whether that location was made-before or after the election, it is equally j ust to presume that the bondholders, who parted with their money, entertained the same-belief. The one were certainly as much bound to know as the other; and if both were mistaken, no principle of law or justice-would demand, that the tax-payers should retain the fruits of the mistake, and, at the same time, repudiate those very acts of their own which misled the bondholders and induced them to part with their money: in truth, blowing hot to get the bondholders’ money, and blowing cold to rid themselves of the obligation to refund it.
But if this view of the case were not conclusive, the provisions of the act of January 16,1851, (49 L. L. 458), would seem at least intended to authorize a bondholder to look only to the record in the auditor’s office to ascertain whether the subscription of the trustees was legal and valid. . The record is, by the express terms of the statute, “ made conclusive evidence of the legality and validity of the subscriptions made by the trusteesand “ the bonds signed and issued hy said trustees, to pay the subscription, *shall *300 be deemed and taken as conclusive evidence that the said bonds were so signed and issued in pursuance of said acts.”

Peremptory mandamus allowed.

Bartley, C. J., and Brinkerhoee, Scott, and Sutliee, JJ., concurred.